# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NORRISTOWN ON-SITE, INC.,**<br>Plaintiff, | CIVIL ACTION |
| v. | |
| **REGIONAL INDUSTRIES, L.L.C.,**<br>Defendant. | NO. 19-369 |

### MEMORANDUM OPINION

This dispute arises out of a contract between a staffing company, Norristown On-Site, Inc. d/b/a Centrix Staffing ("Centrix"), and a waste management company, Regional Industries, L.L.C. ("Regional"). Regional stopped paying Centrix's invoices for over six months, claiming that Centrix had been overbilling Regional for hours that had not actually been worked. In response, Centrix filed a Complaint for Confession of Judgment, alleging that pursuant to their contract, Regional owed Centrix the total invoice debt, plus interest and attorney's fees. Regional counterclaimed, alleging breach of contract, fraud, and negligent supervision, and seeking indemnification and punitive damages. Centrix now moves for summary judgment on its request for confession of judgment and on Regional's fraud, negligent supervision, indemnification, and punitive damages counterclaims.[1]

---

[1] Centrix also moves for summary judgment on the fifth counterclaim, which alleges all the other claims against John and Jane Does, who have not subsequently been named. "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Blakeslee v. Clinton Cty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (internal citation omitted). Because Regional has not supplied the names and did not oppose Centrix's argument for dismissing the John Does, they are dismissed and summary judgment on the fifth counterclaim is granted.

Centrix does not move for summary judgment on Regional's counterclaim for breach of contract.

I.       **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Centrix is a staffing and job-placement services company with its principal place of business in Philadelphia, Pennsylvania and a branch office in Union City, New Jersey. Regional is a solid waste and recycling limited liability company with its principal place of business in Elizabeth, New Jersey.

On June 6, 2017, Centrix and Regional entered into a two-page contract ("Agreement") for Centrix to provide personnel to perform trash collection services. Pursuant to the Agreement, Centrix agreed to provide Regional with "timesheets or forms" to document time worked and weekly invoices for wages and costs which were payable upon receipt. Interest on overdue invoices was set at the rate of 1.85% per month. Failure to pay by the invoice due date would constitute default, and if default occurred, Centrix was authorized to appear for and confess judgment against Regional in the amount of the debt, with interest, cost of suit, and attorney's fees.[2]

Centrix began providing Regional with employees shortly after the Agreement was executed. In their timekeeping records, Regional employees Renee Negron and Kenny Winters handwrote the number of hours each Centrix employee worked into a typed form that listed Centrix employees' names; signed the timesheets at the end of the week; and provided copies to

---

[2] The Rates and Invoices section of the Agreement states:

> CENTRIX will invoice CLIENT weekly, invoices represent wage costs and are payable upon receipt. Interest on past due invoices will be charged at the rate of 1.85% per month. Failure to pay invoices on or before the Invoice due date will constitute an Event of Default, whereupon CENTRIX will be authorized to appear for and confess judgment against CLIENT as provided below. . . . In addition, upon the occurrence of an Event of Default, CLIENT authorizes and empowers the Prothonotary, Clerk of Court or any Attorney of any Court of Record of the Commonwealth of Pennsylvania, or elsewhere, to appear for and confess judgment against the CLIENT and in favor of CENTRIX . . . for all sums as may be due by the terms hereof, together with all costs of suit and reasonable counsel fees.

one Eugene Graham.  Whether Graham was Centrix's independent contractor or employee remains in dispute, as does his process for converting the handwritten forms he received from Regional into a PDF file he submitted via email to Centrix.  Centrix employees then inputted the information from Graham's PDF file into its payroll system.

Centrix's Philadelphia office issued the payroll checks to be printed remotely at the Union City office and picked up by Graham.  Disputes remain as to how the paychecks were distributed to Centrix employees and whether they were asked for identification when they received their checks.

Centrix's Philadelphia office also generated invoices and sent Regional a copy of the invoice along with the corresponding digital timesheet created by Graham.  Centrix's invoices stated that they were due 15 days after the bill close date.  Between June 2017 and July 2018, Regional made regular payments on the Centrix invoices.

In July 2018, Regional began noticing discrepancies between its handwritten timesheets and the digital timesheets and invoices Centrix submitted.  As one example, for the night shift starting on March 5, 2018, Graham's digital timesheets listed hours worked for Andrew Graham and Fiheem Graham, but Regional's handwritten timesheets did not show any hours worked for them.[3]  Regional alerted Centrix to the discrepancies.  In response, Centrix provided Regional with information for those employees who appeared on Centrix's invoices but who did not appear on the timesheets drafted by Regional.  Regional supervisors did not recognize any of those employees' names or photographs, despite Centrix's invoices showing that these employees worked with Regional for months.  Ultimately, Regional identified over a dozen

---

[3] It is unclear from the record whether Andrew and Fiheem are related to Eugene Graham, though it was admitted that Fiheem's employment application listed the same home address as Eugene Graham's 2019 tax forms, and that Andrew listed Eugene as his emergency contact on his employment application.

3

Centrix employees who appeared on the invoices submitted by Centrix but not on the timesheets drafted by Regional. Centrix nevertheless denied that it had been overbilling Regional. Regional maintains that the billing discrepancies date back to at least January 2018 and that its internal investigation preliminarily estimated that Centrix overbilled Regional for approximately $261,232.81 by September 2018.

Beginning on August 15, 2018 and through February 1, 2019, Regional stopped making payments on nearly all invoices and still had not paid at the time of this Complaint's filing. Centrix claims it is owed $266,148.45 for what it terms "undisputed and unpaid invoices" for wages, payroll taxes, and insurance for September 5, 2018 through February 1, 2019, plus 1.85% interest, attorney's fees, and costs pursuant to the Agreement.[4] Regional maintains that the amounts owed *are* disputed because Regional was overbilled starting in January 2018, and thus by September 2018, Regional should have been credited for the hundreds of thousands of dollars it had been overbilled by Centrix. Moreover, Regional maintains that Centrix "first materially breached the Agreement by submitting fraudulent invoices to Regional for renumeration[,]" which "precludes Centrix from moving for performance under the Agreement."

On January 24, 2019, Centrix filed its Complaint in Confession of Judgment against Regional for the unpaid invoices. The Court entered an Order confessing judgment. Regional filed a Petition to Strike the Confessed Judgment and alleged counterclaims, followed by an Amended Petition to Strike or, in the Alternative, to Open the Confessed Judgment. Following a hearing, the Court denied Regional's Motion to Strike the Confessed Judgment but granted its Petition to Open the Confessed Judgment.

---

[4] Centrix has excluded "disputed amounts" billed in August, September, and October 2018 from this total.

## II. LEGAL STANDARDS

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, it must be determined "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011). In deciding a motion for summary judgment, all evidence and reasonable inferences from the evidence must be taken in the light most favorable to the non-moving party. *Macfarlan*, 675 F.3d at 271.

## III. ANALYSIS

### A. Confession of Judgment

Centrix moves for summary judgment on its request for confession of judgment because it argues the amount owed is undisputed; Regional disagrees.

Pennsylvania law governs substantive challenges to a confession of judgment, *see F.D.I.C. v. Deglau*, 207 F.3d 153, 166 (3d Cir. 2000), which is a "procedure that lets a plaintiff obtain a judgment while skipping almost all the steps in an ordinary litigation." *Complete Bus. Sols. Grp., Inc. v. HMC, Inc.*, 2019 WL 4858273, at *2 (E.D. Pa. Oct. 2, 2019) (citing Pa. R. Civ. P. 2950-2967). "Confession of judgment is a powerful tool, because it effectively prevents the debtor from having his day in court." *PNC Bank v. Bolus,* 655 A.2d

997, 1000 (Pa. Super. 1995).

After the court enters a confession of judgment, the defendant may move to strike or open the judgment. Pa. R. Civ. P. 2959; *see also Resolution Tr. Corp. v. Copley Qu-Wayne Assocs.*, 683 A.2d. 269, 273 (Pa. 1996) ("A petition to open a confessed judgment is governed by Pa. R. C. P. 2959. A party is entitled to have a judgment entered by confession opened if evidence is produced which in a jury trial would require the issues to be submitted to the jury."). "Unlike a motion to strike, a motion to open does not get rid of the judgment. Instead, a motion to open gives the parties an opportunity to conduct discovery and resolve factual disputes about the judgment." *Complete*, 2019 WL 4858273, at *2 (citing *Resolution*, 683 A.2d at 273).

"If a judgment is opened in whole or in part the issues to be tried shall be defined by the complaint if a complaint has been filed, and by the petition, answer and the order of the court opening the judgment. There shall be no further pleadings." Pa. R. Civ. P. 2960.

Here, following Centrix's petition and Regional's answer with counterclaims, the Court held a hearing and opened the confessed judgment. In doing so, the Court noted that the question was whether "the amounts at issue in this litigation [are] disputed amounts, or . . . unpaid invoices that were not connected to that discrepancy dispute." Following discovery, this question remains unresolved. Regional maintains the alleged overbilling is "intertwined with the monies sought by Centrix," while Centrix claims the invoices are "undisputed and unpaid."

At its core, the confession of judgment dispute here is actually about a breach of contract. Under Pennsylvania law, a claim for breach of contract requires that a plaintiff establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir.

2003).[5]  The parties agree that there was a valid contract here, but Regional maintains that Centrix breached the contract first by submitting fraudulent invoices, which relieved Regional from its obligation to keep paying.  *See LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009) (noting that Pennsylvania courts have "long recognized the established precept of contract law that a material breach of a contract relieves the non-breaching party from any continuing duty of performance thereunder").  Factual disputes remain as to whether Centrix breached the contract first by overbilling Regional.  Additionally, in its briefing, Centrix agrees to credit Regional for September and October 2018 and concedes that it is not seeking payment for "disputed amounts" billed in August 2018.  But because the alleged overbilling spanned many months, not just August through October, the total amount owed—viewed in the light most favorable to Regional, the non-moving party—continues to be in dispute.  Given that the rule in opening a confessed judgment is that the defendant must show evidence "which in a jury trial would require that the issues be submitted to the jury[,]" *Germantown Savs. Bank v. Talacki,* 657 A.2d 1285, 1288-89 (Pa. Super. 1995), and that genuine disputes of material fact remain as to who breached the contract first and what amount is owed, summary judgment is not warranted here.

### B. Tort Counterclaims: Fraud and Negligent Supervision

Regional brings counterclaims for fraud based on Centrix's performance of the contract, specifically the submission of allegedly false timesheets, and for Centrix's negligent supervision of Graham, who "submitted overstated billings for services provided to Regional."  Centrix urges

---

[5] Both parties have cited only to Pennsylvania law in arguing their respective positions on the confession of judgment and breach of contract claims.  Thus, any contention that a different state's law applies has been waived. *See Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 180 (3d Cir. 1995) (en banc) ("[C]hoice of law issues may be waived."); *MacDonald v. Unisys Corp.*, 951 F. Supp.2d 729, 737 n.5 (E.D. Pa. 2013) (holding that party waived choice of law argument by citing only one state's laws).

7

the Court to grant summary judgment on these tort counterclaims as being barred by the gist of the action doctrine and the economic loss doctrine because the counterclaims flow from the parties' contractual relationship. In the alternative, Centrix argues summary judgment is warranted because Regional has failed to establish a *prima facie* case for fraud and because Eugene Graham was Centrix's independent contractor, not an employee as required for a negligent supervision claim. Because the claims are foreclosed by the economic loss doctrine, the gist of the action doctrine, *prima facie* case, and independent contractor arguments will not be addressed.

As a preliminary matter, the Agreement has no choice-of-law provision, and the parties dispute whether Pennsylvania or New Jersey law applies to the fraud and negligent supervision counterclaims—and thus whether the economic loss doctrine may apply here.

A federal court exercising diversity jurisdiction generally applies the choice-of-law rules of the forum state, which in this case is Pennsylvania. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Pac. Emp'rs Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012). Pennsylvania follows a "flexible [choice of law] rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964); *see also Chemetron Invs., Inc. v. Fidelity & Cas. Co. of N.Y.*, 886 F. Supp. 1194, 1198 (W. D. Pa. 1994) (collecting cases and noting that Pennsylvania courts and the Third Circuit have applied *Griffith* to contract cases even though *Griffith* was a tort case). "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case. . . ." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

8

Under this flexible approach, the Court first must identify whether there are relevant differences between the states' laws that would affect the disposition of the litigation: "If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary. Thus, the first part of the choice of law inquiry is best understood as determining if there is an *actual* or real conflict between the potentially applicable laws." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (emphasis in original). If not, the court "may refer to the states' laws interchangeably." *Id.* at 229.

Both Pennsylvania and New Jersey recognize the economic loss doctrine. *See Dittman v. UPMC*, 196 A.3d 1036, 1053-56 (Pa. 2018) (applying the economic loss doctrine and discussing its contours); *see also G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp.3d 583, 588-89 (D.N.J. 2014) ("[T]he economic loss doctrine helps to maintain the 'critical' 'distinctions between tort and contract actions.'") (quoting *Saltiel v. GSI Consultants*, 788 A.2d 268, 276 (N.J. 2002)). Regional contends that there is no economic loss doctrine in New Jersey, but in fact, that is not the case. *See id.* The parties have identified no specific difference between the economic loss doctrine in Pennsylvania and New Jersey. Because there is no identified conflict, the court "may refer to the states' laws interchangeably." *Hammersmith*, 480 F.3d at 229.

The economic loss doctrine bars recovery on a claim if the allegedly breached duty arises under a contract between the parties. *Dittman*, 196 A.3d at 1054 (holding that "if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action"); *see also Duhring Res. Co. v. United States*, 775 F. App'x 742, 747 (3d Cir. 2019) (discussing the economic loss doctrine as explained in *Dittman*); *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (holding that the economic loss

9

doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract"). "The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as result of a breach of duties assumed only by agreement. Compensation in such cases requires an analysis of damages which were in the contemplation of the parties at the origination of the agreement, an analysis within the sole purview of contract law." *Auger v. Stouffer Corp.*, 1993 WL 364622, at *3 (E.D. Pa. Aug. 31, 1993).[6]

Centrix argues that because the parties have a contractual relationship, their duties and obligations are defined by the Agreement. Regional responds that the applicability of the economic loss doctrine depends on whether Centrix's allegedly tortious conduct overlaps with the obligations set forth in the contract. Certainly, there is a distinction between a contractual duty and a tort duty:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014); *see also Saltiel*, 788 A.2d at 280 ("[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").

---

[6] While the economic loss doctrine "developed in the context of . . . products liability . . . cases where one party contracts for a product from another party and the product malfunctions," *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001), it has not been limited to products liability and has since been applied in other contexts. *See, e.g.*, *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 372-73 (E.D. Pa. 1996) (collecting cases and applying economic loss doctrine to service contracts); *see also Factory Market, Inc. v. Schuller Int'l Inc.*, 987 F. Supp. 387, 397 (E.D. Pa. 1997) (same).

In neither Pennsylvania nor New Jersey has the highest court ruled on whether the economic loss doctrine operates to bar the claim here: fraud in the performance of a contract. While the Pennsylvania Supreme Court has not directly addressed how the economic loss doctrine applies to intentional fraud claims, the Third Circuit has predicted it would bar intentional fraud claims "that overlap with contract claims." *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675-81 (3d Cir. 2002).[7]  New Jersey courts take a similar view: "Although the economic loss doctrine is unsettled in New Jersey, courts in this district generally distinguish between claims intrinsic to the contract, which are barred by the doctrine, and claims extrinsic to the contract, which are not barred by the doctrine." *Ribble Co. v. Burkert Fluid Control Sys.*, 2016 WL 6886869, at *3 (D.N.J. Nov. 22, 2016); *see also 7-Eleven, Inc. v. Maia Inv. Co.*, 2015 WL 1802512, at *5 (D.N.J. Apr. 17, 2015) ("Although the New Jersey Supreme Court has yet to resolve the question, courts in this District consistently distinguish between fraud in the inducement and fraud in the performance of a contract."); *Chen v. HD Dimension Corp.*, 2010 WL 4721514, *8 (D.N.J. Nov. 15, 2010) (same).  Both Pennsylvania and New Jersey case law therefore counsel the economic loss doctrine bars a fraud claim pertaining to the performance of a contract, because performance is intrinsic to the contract.[8]

---

[7] In *Werwinski*, the Third Circuit also identified an exception preventing the application of the economic loss doctrine to "fraud-in-the-inducement" claims, which are extraneous and *not* interwoven with the alleged breach of contract.  *See* 286 F.3d at 676.  But the Court noted that this exception was "limited" and discussed how it should apply to cases "where the claims at issue arise independent[ly] of the underlying contract." *Id.*  As discussed below, that is not the case here, because the alleged fraud *is* interwoven with the alleged breach of contract.

[8] Regional's citations to the contrary are inapposite.  In *Perth Amboy*, the court analyzed "the boundary between strict liability, negligence, and the U.C.C." in the context of a commercial yacht purchaser's claim against a manufacturer.  *Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co.*, 226 N.J. Super. 200, 227 (App. Div. 1988), *aff'd*, 118 N.J. 249 (1990) (internal quotations omitted).  It did not analyze the application of the economic loss doctrine to an alleged fraud during the performance of a contract, nor did *B.F. Hirsch v. Enright Refining Co.*, 577 F. Supp. 339, 343-44 (D.N.J. 1983), *aff'd in part*, 751 F.2d 628 (3d Cir. 1984).

11

Here, Regional attempts to cast its fraud claim as a breach of an independent duty—and therefore unrelated to the breach of contract—by alleging that Centrix "breached a societal duty by wantonly misrepresenting the numbers of hours worked by Centrix employees." But Regional provides no legal authority for a "societal duty" that exists in this context. Regional relies on an insurance case, in which the Pennsylvania Supreme Court held that the legislature imposed a duty of good faith on insurers—a duty "imposed by law as a matter of social policy, rather than one imposed by mutual consensus." *See Ash v. Cont'l. Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). There is no such legislatively imposed societal duty here; the duties are imposed by mutual consensus through the Agreement.

In that Regional alleges, as the basis for its fraud claim, that "Centrix . . . falsely represented the number of hours its employees worked[,]" the fraud claim relates directly to the parties' contract, which speaks to staffing, timekeeping, and invoicing. "[F]undamentally, the gravamen of [Regional's] fraud claim—that [Centrix] ultimately failed to perform in accordance with the Agreement—is identical to [Regional's] breach of contract claim." *See Ribble*, 2016 WL 6886869, at *3; *see also RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp.2d 436, 451-53 (D.N.J. 2012) (granting summary judgment on plaintiff's fraud claim because the allegations were not "unrelated to the performance of the contract"); *Silva v. Rite Aid Corp.*, 416 F. Supp.3d 394, 403 (M.D. Pa. 2019) (dismissing fraud claim as barred by economic loss doctrine because it was "intrinsic to the contract" and not "external" to the contractual obligations).[9] Thus, Regional's fraud counterclaim "is barred by the economic loss doctrine

---

[9] Regional suggests summary judgment based on the economic loss doctrine is premature, relying on *PNC Mortgage v. Superior Mortgage Corporation*, 2012 WL 628000 (E.D. Pa. Feb. 27, 2012). But the *PNC* court held that a summary judgment ruling was premature because of a question of fact as to which of two contracts applied, *id.* at 16; that is not the case here. Moreover, courts routinely grant summary judgment on fraud claims based on application of the economic loss doctrine. *See, e.g.*, *RNC Sys.*, 861 F. Supp.2d at 451, 453; *Vukovich v. Haifa, Inc.*, 2007 WL 655597, at *8 (D.N.J. Feb. 27, 2007) (granting summary judgment on "Plaintiff's claims for fraud that arose during the performance of the contract" as barred by the economic loss doctrine); *Ross v. Celtron Int'l, Inc.*,

12

because it is inextricably linked to [Centrix's] performance under the Agreement." *See Ribble*, 2016 WL 6886869, at *3.

Regional's negligent supervision counterclaim is barred for similar reasons. In *Bruno*, the Pennsylvania Supreme Court found that while the insurance company had contractual obligations to its policyholder to investigate and pay for mold damage, the gist of the action doctrine[10] did not bar the homeowners' tort claim because they adequately pled that the insurance agents breached a "social duty" in giving them "unfounded advice" that the mold was "harmless . . . which later led to them suffering health problems." 106 A.3d at 71. Thus, "[t]he policy . . . merely served as the vehicle which established the relationship between the [homeowners] and Erie [Insurance], during the existence of which Erie allegedly committed a tort." *Id.; see also Young v. Home Depot U.S.A., Inc.*, 2016 WL 8716423, at *1, *7 (E.D. Pa. Sept. 30, 2016) (holding that the gist of the action doctrine did not bar the negligence claim because Home Depot owed the plaintiff-homeowners a societal duty in "its selection and supervision of subcontractors and this duty was breached by allowing unskilled or inexperienced workers to perform the work[,]" resulting in extensive physical damage).

Here, by contrast, Regional has not articulated the existence of a societal duty which would allow it to proceed on its negligent supervision counterclaim. *See Saltiel*, 788 A.2d at 280 ("In this transaction, we are unable to discern any duty owed to the plaintiff that is independent of the duties that arose under the contract."); *see also New Mea Constr. Corp. v. Harper*, 497

---

494 F. Supp.2d 288, 298 (D.N.J. 2007). Given that it is clear that the Agreement here governs and that the alleged tort claims relate to the contract, summary judgment based on the economic loss doctrine is not premature.

[10] "The two doctrines, gist of the action and economic loss, are closely related[,]" *Graham Packaging Co., L.P. v. Transplace Tex., L.P.*, 2015 WL 8012970, at *2 (M.D. Pa. Dec. 7, 2015), and the societal duty analysis is therefore relevant in both contexts.

A.2d 534, 539 (N.J. App. Div. 1985) ("Merely nominally casting this cause of action as one for negligent supervision does not alter its nature."). The negligent supervision counterclaim arises directly from the parties' contract. As the basis for the counterclaim, Regional alleged Centrix failed to supervise Graham, who was "responsible for . . . submitting timesheets" and he "submitted overstated billings"—but these allegations are rooted directly in the contract, which speaks to bill rates, overtime, timesheets, and invoices. Because there is no duty here independent of the contract, the negligent supervision claim is also barred by the economic loss doctrine.

### C. Indemnification Counterclaim

Regional contends that "Centrix is required to indemnify Regional for any claims or losses caused by a breach of the Agreement[,]" including attorney's fees. It premises this argument on an indemnification provision found in the parties' contract:

> To the extent permitted by law, CENTRIX will defend, indemnify, and hold CLIENT and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by CENTRIX's breach of this Agreement, failure to discharge its duties and responsibilities set forth in the Agreement, or the gross negligence or willful misconduct of CENTRIX or CENTRIX's officers, employees, or authorized agents in the discharge of those duties and responsibilities; *provided, however*, that CLIENT shall fully cooperate with CENTRIX's appointed counsel and asserting all defenses to any actions, suits or claims including, but not limited to, those pursuant to the borrowed servant doctrine or joint employer defense, as necessary.

(emphasis added). The parties dispute as to whether the indemnification provision applies in this instance. Regional focuses on the first half of the provision, arguing that it explicitly applies to first-party claims by stating that Centrix will indemnify Regional from all losses "to the extent caused by Centrix's breach of this Agreement[.]" Centrix concentrates on the language following "provided, however[,]" which it argues makes clear that the indemnification provision applies only to third-party claims, not to the claims here.

14

"[C]ontract interpretation is a question of law." *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008) (quoting *Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped*, 886 A.2d 706, 711 (Pa. Commw. 2005)). Pennsylvania courts apply the plain meaning rule of contract interpretation: "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982). "[I]n construing a contract, each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Marcinak v. Southeastern Greene Sch. Dist.*, 544 A.2d 1025, 1027 (Pa. Super. 1988). For an indemnification provision, the intent to indemnify for the particular claim must be clear from the terms of the agreement. *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 43 (Pa. Super. 1997). Pennsylvania courts require an indemnity agreement to be strictly construed against the party asserting it. *Kiewit Eastern Co., Inc. v. L & R Constr. Co., Inc.*, 44 F.3d 1194, 1202-03 (3d Cir. 1995) (collecting cases).

While Regional states some of these principles correctly, it applies them incorrectly by focusing exclusively on the first half of the indemnity provision. In general, "[i]ndemnity is a form of compensation in which a first party is liable to pay a second party for a loss or damage which the second party incurs to a third party." 41 Am. Jur.2d Indemnity § 1 (1995). Although the word may sometimes have a broader meaning, that meaning does not emerge unambiguously in the contract here. There is no clear intent to indemnify for first-party claims. *See Bethlehem Steel*, 703 A.2d at 43. In fact, the surrounding language undermines Regional's reading. It requires Centrix not just to indemnify Regional but also to "hold [it] . . . harmless[,]" yet Regional has not explained how it could be held harmless in its own action against Centrix. *See*

15

*Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (interpreting similar indemnification language, holding that "indemnify" must be interpreted in relation to the accompanying words "defend" and "hold harmless[,]" and finding that "the only sensible reading of [the indemnification] clause evidence[d] a requirement that third-party liability exist for the clause to be triggered").[11]  Moreover, the "provided for" language requires Regional to "fully cooperate" with Centrix's counsel—a requirement which, again, does not make sense in the context of first-party claims.  Taking into account "each and every part of" the indemnification provision, *Marcinak*, 544 A.2d at 1027, it is clear that it is intended to apply to third-party claims, and not to Regional's claims against Centrix.

Pennsylvania law allows for the recovery of attorney's fees "from an adverse party to a cause only when provided for by statute, *or when clearly agreed to by the parties*."  *Fidelity-Philadelphia Tr. Co. v. Phila. Transp. Co.*, 173 A.2d 109, 113 (Pa. 1961) (emphasis added).  Because the parties' contract here does not clearly allow for Regional's recovery under the indemnification provision, Regional may not recover attorney's fees on this basis.

### D.  Punitive Damages Counterclaim

Regional also seeks punitive damages against Centrix.  Punitive damages generally are not recoverable for breach of contract.  *See McShea v. City of Philadelphia*, 995 A.2d 334, 340 n.5 (Pa. 2010) ("Punitive damages are awarded in tort actions, not for breach of contract."); *Ash*, 932 A.2d at 881 (same).  The only exception to this rule is where "the person who breaks a contract also breaches some duty imposed by society[;]" then, "compensatory or punitive

---

[11] In *Travelers*, the Third Circuit applied New Jersey law, but "its analysis is instructive . . . because the relevant principles of contract construction that were applied in *Travelers* mirror the principles of contract construction that apply . . . under Pennsylvania law."  *Equitrans Servs., LLC v. Precision Pipeline, LLC*, 154 F. Supp.3d 189, 203 n.8 (W.D. Pa. 2015).  Indeed, "under the law of both [Pennsylvania and New Jersey], an asserted indemnification contract will be carefully scrutinized, and is subject to strict construction."  *Gerard v. Penn Valley Constructors, Inc.*, 495 A.2d 210, 212 (Pa. Super. 1985).

damages [may] be imposed against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent."  *Daniel Adams Assocs., Inc. v. Rimbach Pub. Inc.*, 429 A.2d 726, 728 (Pa. Super. 1981); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1194 (3d Cir. 1993) ("Under New Jersey law breaches of contract, even if intentionally committed, do not warrant an award of punitive damages in the absence of a showing that defendant also breached a duty independent of that created by the contract.").  Given that Regional's only surviving counterclaim is for breach of contract and no independent societal duty has been breached, punitive damages are unavailable to Regional here.

  For the foregoing reasons, Centrix's motion for summary judgment will be granted in part and denied in part.  An appropriate order follows.

**August 10, 2020**

                  **BY THE COURT:**

                  */s/ Wendy Beetlestone*
                  _____
                  **WENDY BEETLESTONE, J.**