## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORRISTOWN ON-SITE, INC., | | CIVIL ACTION |
| **Plaintiff,** | | |
| | | |
| v. | | |
| | | |
| REGIONAL INDUSTRIES, L.L.C., | | NO.  19-369 |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

After trial, a jury resolved this contractual dispute in Plaintiff's favor.  Plaintiff now brings a Motion for Attorneys' Fees and Costs, as well as a Motion to Amend Judgment seeking the inclusion of contractual interest in the jury award.  Meanwhile, Defendant has filed a Motion for Judgment Notwithstanding the Verdict, or, in the Alternative, for a New Trial.  For the reasons that follow, Defendant's Motion shall be denied, Plaintiff's Motion to Amend the Judgment shall be granted, and Plaintiff's Motion for Attorneys' Fees and Costs shall be granted in part.

### I.    FACTS

Regional Industries L.L.C. ("Regional") and Norristown On-Site, Inc. d/b/a Centrix Staffing ("Centrix") had a Staffing Services Agreement: Regional would pay Centrix to provide temporary workers for its waste hauling business, which included processing the wages according to the hours worked and invoicing Regional.  But things did not go as planned.

The trouble arose from the companies' record-keeping.  Regional managed the workers'

1

shifts with "daily route sheets" that forecast who was expected to work which route.  Regional

used these daily route sheets, along with contemporaneous notes from its route managers, to

complete the workers' timesheets at the end of each shift.  Regional kept the original timesheets

and gave a copy to Centrix employee Eugene Graham, who would come by the job sites to

collect the copies and take them to Centrix's office in Union City, New Jersey.  At some point,

Graham stopped delivering the paper timesheets to Union City in person and instead just typed

them up and submitted them to the office electronically.  Centrix then used the digital timesheets

prepared by Graham to generate invoices, which were sent to Regional for payment, along with

copies of the digital timesheets.

In 2018, Regional noticed discrepancies between its handwritten timesheets, and the

digital timesheets and invoices submitted by Centrix.  Workers were appearing on Centrix's

timesheets but not on Regional's.  Regional suspected that Centrix was adding fake workers to

the timesheets and overbilling Regional by hundreds of thousands of dollars.  As the dispute

simmered, Regional stopped paying Centrix's invoices, but Centrix kept supplying workers to

Regional and paying their wages.

The jury entered a verdict that Regional had breached the Staffing Services Agreement

and awarded $313,165.40 to Centrix in damages (the "Award"), which amount corresponded to

the principal owed on the outstanding invoices.  The jury also found that Centrix had not

breached the Staffing Services Agreement and awarded no damages to Regional.

## II.   DISCUSSION

### A. Renewed Motion for Judgment as a Matter of Law

#### i. *Legal Standards*

Federal Rule of Civil Procedure 50 permits a party to bring an initial motion for judgment

as a matter of law during a jury trial on the grounds that no reasonable jury would have legally

sufficient evidence to find for the opposing party on a given issue.  Fed. R. Civ. P. 50(a)(1).  If

denied, the party may renew its motion after trial and include an alternative request for a new

trial.  Fed. R. Civ. P. 50(b).[1]  The renewed motion is merely a "renewal of the preverdict

motion," and "it only can be granted on the grounds raised in the earlier motion."  Wright &

Miller, *supra* note 1 § 2521; Fed. R. Civ. P. 50(b) ("If the court does not grant a motion for

judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the

action to the jury subject to the court's later deciding the legal questions *raised by the motion*.")

(emphasis added).

To effectively preserve its arguments for the renewed motion, the initial motion for

judgment as a matter of law must be "sufficiently specific to afford the party against whom the

motion is directed with an opportunity to cure possible defects in proof which otherwise might

make its case legally insufficient."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1173 (3d

Cir. 1993) (motion for judgment as a matter of law based on proximate causation did not

preserve for renewed motion arguments based on contract law of foreseeability).

A renewed motion for judgment as a matter of law may be granted "only if, as a matter of

law, the record is critically deficient of that minimum quantity of evidence from which a jury

might reasonably afford relief."  *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249

(3d Cir. 2001) (quoting *Powell v. J.T. Posey Co.*, 766 F.2d 131, 133-34 (3d Cir. 1985).  In other

words, the motion may be granted only if "there is no legally sufficient evidentiary basis for a

reasonable jury" to have found in the nonmovant's favor.  *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d

---

[1] The renewed motion for judgment as a matter of law used to be called a motion for judgment notwithstanding the verdict.  9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2521 (3d ed. Apr. 2021 Update).  The name change did not alter the applicable standards.  *Id.*  Although Defendant styled its motion using the old nomenclature, the Court adopts the new, except when specifically referring to Defendant's motion.

424, 428 (3d Cir. 2008) (citing Fed. R. Civ. P. 50(a)).  In determining whether the evidence is sufficient to sustain liability, the court "draws all reasonable and logical inferences in the nonmovant's favor"; it "may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc.*, 4 F.3d at 1166 (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992).  Judgment as a matter of law is granting "sparingly." *Id.*

At trial, Regional moved for judgment as a matter of law on the grounds that Centrix's employee Eugene Graham had recreated the original timesheets provided by Regional's supervisors, and that Centrix had therefore failed to use "verified hours" to generate the invoices, in violation of the Staffing Services Agreement.

In its renewed motion, Regional argues that Centrix did not prove its "claim for confession of judgment" and is not entitled to the "remedy of confession of judgment."  Regional maintains that "the issue put to the jury . . . was that of a simple breach of contract claim," and that it is entitled to judgment as a matter of law on "Centrix's claim for confession of judgment."

It is difficult to comprehend these arguments and they reveal a misunderstanding about what confession of judgment is.  Confession of judgment is neither a claim nor a remedy—it is a state law procedure by which parties to a contract may voluntarily submit to the court's jurisdiction to enter judgment and waive their right to prejudgment procedures.  *See* Pa. R. Civ. P. 2950–2967; *F.D.I.C. v. Deglau*, 207 F.3d 153, 159 (3d Cir. 2000); 11 Alan J. Jacobs, *Standard Pennsylvania Practice* §§ 67:1–67:2 (2d ed. Oct. 2021 update).  Regional cannot be entitled to judgment as a matter of law on "Centrix's claim of confession of judgment" because there is no such claim.  In any case, as these arguments are not those on which Regional relied in making its Rule 50 motion at trial, the renewed motion must be denied.

4

### B.  Motion for New Trial

#### i.  *Legal Standards*

As permitted by Federal Rule of Civil Procedure 50(b), Regional argues in the alternative for a new trial based on its view (1) that the verdict was against the weight of the evidence; and, (2) that the verdict was "motivated by improper considerations" due to its view that there were substantial errors in the jury charge and in the admission or rejection of evidence during the trial.[2]

A new trial may be granted on the ground that the verdict was against the weight of the evidence only if "a miscarriage of justice would result if the verdict were to stand."  *Fineman*, 980 F.2d at 211 (quoting *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)).  "[T]he purpose of this rule is to ensure that the trial court does not supplant the jury verdict with its own interpretation of the facts."  *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282 (3d Cir. 1993) (citing *Fineman*, 980 F.2d at 211).  Thus, the district court may not "substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury.'" *Fineman*, 980 F.2d at 211 (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960), *cert. denied*, 364 U.S. 835 (1960)).  "A dispute over credibility will not justify a new trial." *Consumers Power Co. v. Curtiss-Wright Corp.*, 780 F.2d 1093, 1097 (3rd Cir. 1986).  In considering a motion for a new trial on the basis of alleged errors, "all errors and defects that do not affect any party's substantial rights" are disregarded.  Fed. R. Civ. P. 61.

#### ii.  *Discussion*

Regional contends that the jury verdict in Centrix's favor on Regional's counterclaim for

---

[2] Regional also argues that that the award is excessive, but as it does not support that contention with any legal authorities, it will not be considered.  Eastern District of Pennsylvania Local Civil Rule 7.1(c).

breach of contract was against the weight of the evidence because "[a]ll inferences point to Mr.

Graham altering [Regional's] time sheets" before submitting them for invoicing.  In support of

this contention, Regional asserts (without specific citation to the record) that, "[i]n all instances,"

Graham's time sheets "involved larger sums of money" than Regional's time sheets and

"implicated the same employees over and over again"; that "[t]here is no logical explanation why

Regional's time sheets would exclude these same workers on a repeated basis"; and that

Centrix's employees, William Black and Randy Newman, gave conflicting testimony about

whether Centrix was able to verify the workers' identities.

These arguments, however, go to the jury's judgments about the credibility of Graham,

Black, and Newman, judgments which the Court cannot disturb.  *Fineman*, 980 F.2d at 211.

While Regional argues that no logical explanation exists for the time sheet discrepancies except

that Graham deliberately altered them, the jury decided that the witnesses' testimony did not

support this contention.  No miscarriage of justice will result in letting the verdict stand;

therefore no new trial can be granted on this basis.

Regional maintains that a new trial must be had in that the verdict was "motivated by

improper considerations," based on the following procedural errors:

Regional first takes issue with the Court's denial of Regional's request to provide this

charge to the jury: "Under Pennsylvania law, a material breach of a contract relieves the non-

breaching party from any continuing duty to perform thereunder."

The purpose of jury instructions is to accurately inform the jury of the issues and legal

standards applicable to the case.  *See Montgomery Cnty. v. Microvote Corp.*, 320 F.3d 440, 445

(3d Cir. 2003) (scope of review on appeal is "whether the charge, 'taken as a whole, properly

appraises the jury of the issues and the applicable law.'") (quoting *Smith v. Borough of*

*Wilkinsburg*, 147 F.3d 272, 275 (3d Cir. 1998)); *Teixeira v. Town of Coventry*, 882 F.3d 13, 16 (1st Cir. 2018) ("[j]ury instructions are intended to furnish a set of directions composing, in the aggregate, the proper legal standards to be applied by lay jurors in determining the issues that they must resolve in a particular case." (quoting *United States v. DeStefano*, 59 F.3d 1, 2 (1st Cir. 1995)) (alteration in original)).

Courts have "substantial discretion with respect to specific wording of jury instructions and need not give [a] proposed instruction if essential points are covered by those that are given." *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 127 (3d Cir. 2003) (quoting *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995)). To justify a new trial, an error in jury instructions must be so substantial that, viewed in light of the evidence and the charge as a whole, "the instruction was capable of confusing and thereby misleading the jury." *Link v. Mercedes-Benz of N. Am.*, 788 F.2d 918, 922 (quoting *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984)). A new trial is not warranted if the instructions "fairly and adequately submit[ted] the issues in the case to the jury." *Id*. (quoting *Fischbach & Moore, Inc.*, 750 F.2d at 1195).

Regional's contention that "the information contained in Centrix's requested charge was subsumed within the body of the charge, along with other information, such that it was not clear to the jury that it could find that if Centrix breached the contract first, then it could find that Centrix was not entitled to damages" is of no moment in that the requested language was duplicative of the given instruction on material and immaterial breaches of contract, adopted verbatim from the Pennsylvania Proposed Standard Jury Instructions (Civil) § 19.110 (2020), and which provides in relevant part:

> If you decide that there was a breach of the contract, you must decide whether that breach was "material" or "immaterial."

7

> A "material" breach of contract is important enough to allow a party to treat the contract as broken and ended. In that situation, the injured party has no more duties under the contract.
>
> An "immaterial" breach does not end a contract. The injured party must still perform its duties and obligations under the contract, even though they still have a claim for damages for any losses as a result of the breach.

Relatedly, Regional contends that the Court erroneously overruled its objection to the verdict sheet.  The verdict sheet provided to the jury asked two questions: whether Regional had breached the Staffing Services Agreement, and if so, how much would be awarded in damages, then, whether Centrix had breached the Agreement, and if so, how much would be awarded in damages.  Regional objected on the grounds that the verdict sheet "could create an inconsistent result, where the jury could just put the dollar amount that each party is asking for in this case and not consider the import of the breaches."  District courts enjoy the same discretion in formulating verdict sheets as in drafting jury instructions.  *See United States v. Savage*, 970 F.3d 217 (3d Cir. 2020) (reviewing challenge to layout of verdict form for abuse of discretion, citing case law on jury instructions by analogy); *Waldorf v. Shuta*, 896 F.2d 723 (3d Cir. 1990) (trial court's decision to include supplemental note on liability in the verdict form was not an abuse of discretion); *In re Processed Egg Prods. Antitrust Litigation*, 850 F. App'x 142 (3d Cir. 2021) ("We review jury instructions and verdict forms for an abuse of discretion").

In essence, Regional is arguing that components of the jury instructions should have been in included in the verdict sheet, a proposition for which there is no support.  *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 n.8 (3d Cir. 1999) (district court did not abuse discretion by refusing to repeat jury instructions in verdict form); *see also Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1301 (10th Cir. 1998) (rejecting challenge to verdict form because the instructions clearly informed the jury of the legal standard and "[t]he fact that the question on the verdict form does

not contain the language the instructions contain is immaterial."). In any case, as the jury found that only Regional breached the contract, the question of who breached first has no application, and any error related to this objection had no impact on Regional's substantial rights.

Second, Regional argues that the Court's denial of its motion in limine asking the Court to take judicial notice of a November 2018 police report documenting a car accident involving Centrix witness Eugene Graham significantly prejudiced Regional, because the report "cast[] serious doubts on [Centrix's] witness' statements [and] deprived the jury of the opportunity to adequately assess their credibility." Regional had argued in its motion in limine that the report "would [] speak to the truth as to Mr. Graham's reasons for not appearing to answer questions about the billing discrepancies" and "assist the jury in correctly understanding the chronology of events." Centrix countered in its opposition brief that the police report was not relevant to the breach of contact claim.

"[E]videntiary rulings are subject to the trial judge's discretion," *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995), and a new trial "may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." *Becker v. Arco Chem. Co.*, 207 F.3d 176, 205 (3d Cir. 2000) (quoting *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Under Pennsylvania law, the elements of breach of contract are: (1) the existence of a contract; (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). Regional's motion in limine sought judicial notice of the existence of the police report for the purpose of casting doubt on the

reasons Centrix's employee, Graham, gave for not meeting with Regional's management regarding the timesheet disparities in November 2018.  Graham's reasons for not attending the meeting have no impact on any fact of consequence to the dispute, such as whether a breach occurred or what damages resulted.  It is therefore irrelevant, and the police report was properly excluded.

The third argument Regional raises is that it was prejudiced by the Court's denial of its motion in limine seeking to preclude the introduction into evidence of Regional's daily route sheets on relevance grounds, as well as the Court's decision not to give an adverse inference instruction for Centrix's failure to produce the original handwritten timesheets that Regional gave to Centrix.

The daily route sheets are central to the dispute here.  The crux of the Parties' warring claims for breach of contract is the accuracy of the timesheets.  Regional argued that Centrix's invoices overbilled Regional because they relied on inaccurate timesheets doctored by Graham. To shield itself from these allegations, Centrix attacked the accuracy of Regional's timesheets. To do so, Centrix introduced evidence that although Regional's employees used the daily route sheets to prepare their timesheets, the two did not match.  The daily route sheets were therefore relevant to Centrix's defense to Regional's breach of contract counterclaim, and they were properly admitted into evidence.

As to Centrix's failure to produce the original timesheets, Regional recounted two conflicting stories in its motion in limine about what happened—first, that Graham threw away the timesheets after creating digital copies, and second, that Graham gave the timesheets to Centrix, who lost them.  Centrix conceded in its opposition brief that the timesheets "have not been located" but denied spoliation.

In the Third Circuit, "[t]he general principles concerning the inferences to be drawn from the loss or destruction of documents are well established." *Brewer v. Quaker State Oil Refin. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995). "When the contents of a document are relevant to an issue in a case, the trier of fact generally may receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Id.* However, the rule applies only if "there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Id.* "[A] finding of bad faith is pivotal to a spoliation determination." *Bull v. UPS, Inc.*, 665 F.3d 68, 79 (3d Cir. 2012). The burden of proving bad faith is on the party seeking the adverse inference. *Id.* at 77.

While no one disputes the relevance of Regional's handwritten timesheets, no sanctionable spoliation occurred here because there is nothing in the record to suggest that the documents were destroyed in bad faith. Regional's motion in limine made no distinction between whether the timesheets were accidentally lost or intentionally destroyed. Regional accordingly failed to meet its burden of proving bad faith, and it was proper not to give an adverse inference instruction.

Regional's fourth argument concerns certain testimony of William Black, the President of Centrix. At trial, Regional cross-examined Black concerning whether Centrix had tried to reach the alleged ghost workers to verify their identity. On redirect, Centrix's counsel asked Black to describe the "specific steps" that he took to "verify that these individuals were not ghost workers but existed." Black answered that he had compared the endorsement on the back of the workers'

11

paychecks to the signatures stored in Centrix personnel files and decided that "[t]hey were real

people." Regional objected on the basis of Federal Rule of Evidence 901, arguing that Black

could not testify regarding the workers' handwriting because Centrix had not established that

Black was familiar with it. The Court overruled the objection and permitted the testimony.

Federal Rule of Evidence 901 provides that "[t]o satisfy the requirement of authenticating

or identifying an item of evidence, the proponent must produce evidence sufficient to support a

finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *United States v.*

*Turner*, 718 F.3d 226, 232 (3d Cir. 2013). Subparagraph (b)(2) provides that a nonexpert's

opinion on handwriting will satisfy this authentication requirement if it is "genuine" and "based

on a familiarity with it that was not acquired for the current litigation." Fed. R. Evid. 901(b)(2).

The rule requires authentication only for "items of evidence," not for testimonial

evidence. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*,

§ 901.02 (Mark S. Brodin, ed., Matthew Bender 2d ed. 2021); *Cook v. Hoppin*, 783 F.2d 684 (7th

Cir. 1986) ("Rule 901(a) is applicable to offers of real proof as opposed to testimonial proof").

The question, then, is whether Rule 901 provided any basis for excluding Black's testimony.

In the absence of relevant Third Circuit precedent, the Eleventh Circuit's decision in

*United States v. Woods*, 684 F.3d 1045 (11th Cir. 2012) is instructive. In that case, the Eleventh

Circuit affirmed the district court's decision to overrule the defendant's objection to certain

testimony because:

> Woods's counsel did not object to the introduction of any "item" of
> evidence. Rather, Woods's counsel objected only to testimony that the
> government's ordinary forensic process showed that some of the images
> and videos discovered on Woods's computer matched those in the
> NCMEC database. Accordingly, the authentication requirement, which
> applies only to "an item of evidence," is inapplicable, and the district court
> did not abuse its discretion by overruling Woods's objections on these

grounds.

*Id.* (internal citations omitted).

Here, as in *Woods*, Regional's objection is not to the admission of unauthenticated items of evidence, but to the *content of Black's testimony*.  Black did not offer his testimony to authenticate an item of evidence.  Rather, his testimony served to explain what steps Centrix took internally to satisfy itself as to the identity of its workers, when confronted with Regional's accusations that they were ghost workers.  At no point was Black's testimony used to authenticate the handwriting of any worker for admission into evidence.  Rule 901 therefore does not apply, and Black's testimony was properly admitted.[3]

For all the reasons explained above, Regional's Motion for a New Trial will be denied.

## C.  Motion to Amend Judgment

The Staffing Services Agreement provides that "[i]nterest on past due invoices will be charged at the rate of 1.85% per month."  Centrix's Motion to Amend Judgment relies on this language to argue that, pursuant to Federal Rule of Civil Procedure 59(e) the Court should mold the verdict to include contractual interest at the rate of 1.85% monthly, equivalent to $189,017.32 for an amended judgment in the total amount of $502,182.78."

"The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties."  *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006).  "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself."  *Id.*  "[U]nambiguous contracts are interpreted by the

---

[3] *United States v. Clouden*, cited by Regional, is not to the contrary.  *See* 534 F. App'x. 117, 122-23 (3d Cir. 2013) (upholding admission of witness's testimony regarding defendant's handwriting on checks *admitted into evidence as exhibits* because it was based on personal knowledge).

court as a matter of law." *Id.* at 469. Under Pennsylvania law, the nonbreaching party is entitled to contractual interest when the terms of the contract so provide. *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 261 (Pa. 2012).[4]

As Regional concedes, the Staffing Services Agreement unambiguously awards contractual interest to Centrix in the event of default, and the jury was so instructed:

> If you find that Regional breached the contract by failing to pay a definite sum in money owed or to render performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party of the breach is entitled.

The jury found that Regional breached the contract and awarded to Centrix the principal due on the outstanding invoices: $313,165.46. The plain and unambiguous language of the Staffing Services Agreement provides that interest accrued on these overdue invoices. A court "may not refuse to award interest to the prevailing party when the right to interest has been expressly reserved under the terms of the contract," *id.* at 255, because "the interest is said to become an integral part of the debt itself." *Id.* at 261. In such cases, "a court's award of such interest in favor of the prevailing party is not discretionary." *Id.* Centrix is therefore entitled to contractual interest on the Award as a matter of right under Pennsylvania law and it would be clear error to deny such an award.[5]

---

[4] The availability of interest in a diversity action arises under state law. *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1274 n.6 (3d Cir. 1987) (citing *Jarvis v. Johnson*, 668 F.2d 740, 746-47 (3d Cir.1982) (holding that federal courts in diversity cases should apply state law with respect to prejudgment interest), *abrogated on other grounds*, *Kaiser Aluminum & Chem. Co. v. Bonjorno*, 494 U.S. 827 (1990).

[5] Regional also asserts that adding interest to the Award would be unconstitutional additur under *Dimick v. Schiedt*, 293 U.S. 474 (1935). Regional's argument that Centrix's motion seeks unconstitutional additur is unavailing because the Supreme Court has held that motions to amend a judgment to add prejudgment interest are valid under Federal Rule of Civil Procedure 59(e). *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175–76 (1989). Although *Osterneck* concerned a motion for discretionary prejudgment interest, the Court explained in a footnote that Rule 59(e) would also govern a motion for mandatory prejudgment interest (such as contractual interest). *Osterneck*, 489

Accordingly, Centrix's Motion to Amend the Judgment will be granted and contractual interest will be awarded in the amount of $189,017.32.

### D.  Plaintiff's Motion for Attorneys' Fees and Costs

#### i.    *Centrix's Entitlement to Fees*

Under the American Rule, "each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct," *McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009) (quoting *Lucchino v. Commonwealth*, 809 A.2d 264, 267 (Pa. 2002)), unless "there is express statutory authorization, a clear agreement of the parties or some other established exception." *Id.* (quoting *Mosaica Acad. Charter Sch. v. Commonwealth Dep't of Educ.*, 813 A.2d 813, 822 (Pa. 2002).  Parties may express their "clear agreement" to award attorneys' fees to the prevailing party in a breach of contract suit through a contractual fee-shifting provision. *Id.*  If authorized by the underlying contract, a complaint in confession of judgment may assert a claim for attorneys' fees.  Pa. R. Civ. P. 2952.

Centrix seeks a total of $147,118.50 in attorneys' fees, for 444.1 attorney hours expended by eight lawyers and one paralegal.  The supporting Declaration of Sheryl L. Brown declares that Centrix is only claiming fees incurred in the litigation of its affirmative claim for a breach of contract, and not for any services provided in defense of Regional's breach of contract counterclaim.  Centrix argues that the plain language of the Staffing Services Agreement entitles it to these fees:

> CENTRIX will invoice CLIENT [Regional] weekly, invoices represent wage costs and are payable upon receipt, interest on past due invoices will be charged at the rate of 1.85% per month.  Failure to pay invoices on or before the invoice due date will constitute an Event of Default, whereupon

---

U.S. at 176 n.3 ("We do not believe the result should be different where prejudgment interest is available as a matter of right.").

> CENTRIX will be authorized to appear for and confess judgment against
> CLIENT as provided below. . . . [U]pon the occurrence of an Event of
> Default, CLIENT authorizes and empowers the Prothonotary, Clerk of
> Court or any Attorney of any Court of Record of the Commonwealth of
> Pennsylvania, or elsewhere, to appear for and confess judgment against
> the CLIENT and in favor of CENTRIX, its or their successors or assigns,
> for all sums as may be due by the terms hereof, together with all costs of
> suit and *reasonable counsel fees*.

(emphasis added).

On January 24, 2019, Centrix filed a Complaint in Confession of Judgment, alleging that Regional owed Centrix $333,555.71 under the Staffing Services Agreement—consisting of the outstanding debt, interest, attorneys' fees, and costs. On February 4, 2019, the Court entered a confessed judgment in the full amount requested by Centrix ("the Confessed Judgment"). Upon petition by Regional, the Court opened the Confessed Judgment and the case proceeded to trial.

Regional's petition sought to open the Confessed Judgment on the ground that Centrix's invoices were "fraudulently manufactured," and the accuracy of the sum awarded in the Confessed Judgment was therefore disputed. Nowhere in the petition did Regional object to Centrix's entitlement to attorneys' fees, nor did Regional raise this argument at the hearing on the motion. As such, Regional waived its argument that Centrix is not entitled to reasonable attorneys' fees and costs under the terms of the Staffing Services Agreement.

## ii.   *Reasonableness of Attorneys' Fees*

### a.   Legal Standards

Having established that the Staffing Services Agreement contains a valid and applicable fee-shifting provision, it remains to "consider the reasonableness of the attorney fees claimed." *McMullen*, 985 A.2d at 777.

The starting point for determining the amount of a reasonable fee is the lodestar, calculated by multiplying the "number of hours reasonably expended on the litigation" by a

16

reasonable hourly rate. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[6]  The party seeking attorneys' fees bears the burden to prove that its request is reasonable by "submit[ting] evidence supporting the hours worked and rates claimed." *Id*. (internal quotations omitted) (quoting *Hensley*, 461 U.S. at 433). The party opposing the fee award then has the burden to challenge the reasonableness of the requested fee. *Id.*  A reasonable rate is "calculated according to prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The Third Circuit has found that the fee schedule of Community Legal Services, Inc. ("CLS") is an appropriate metric for setting reasonable hourly rates. *Maldonado v. Houstoun*, 256 F.3d 181, 187–88 (3d Cir. 2001). The district court may exclude from the lodestar calculation any hours that are inadequately documented or not reasonably expended. *Hensley*, 461 U.S. at 433-34.

After completing the lodestar calculation, the district court has discretion to adjust the result. *Rode*, 892 F.2d at 1183.  The first adjustment that should be made is a "general reduction" that applies if the lodestar is not reasonable "in light of the results obtained" in the litigation. *Id.*  This reduction "accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Rode*, 892 F.2d at 1183.

Next, the court may consider other reasonableness factors to determine whether further downward adjustments are appropriate.  In considering the amount of a reasonable fee, "[c]ourts deciding cases under Pennsylvania law are guided by" Pennsylvania Rule of Civil Procedure 1717.  *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 532 (3d Cir. 1997) (discussing Pennsylvania Rule of Civil Procedure 1716, which was subsequently renumbered as Rule 1717).

---

[6] Although *Rode* and other cases cited herein concerned motions for attorneys' fees under various statutes, their analysis concerning the calculation of reasonable fees applies to contractual fee provisions as well (and the Parties do not argue otherwise).  *Carpenter Tech. Corp. v. Armco, Inc.*, 808 F. Supp. 408, 410 n.2 (E.D. Pa. 1992).

Rule 1717 provides:

> In all cases where the court is authorized under applicable law to fix the amount of counsel fees it shall consider, among other things, the following factors:
>
> (1) the time and effort reasonably expended by the attorney in the litigation;
> (2) the quality of the services rendered;
> (3) the results achieved and benefits conferred upon the class or upon the public;
> (4) the magnitude, complexity and uniqueness of the litigation; and
> (5) whether the receipt of a fee was contingent on success.

Pa. R. Civ. P. 1717.  The district court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Rode*, 892 F.2d at 1183 (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).

b. <u>Discussion</u>

Regional does not challenge the reasonableness of the rates of Siana Law, Centrix's attorneys, and justly so—they are uniformly lower than prevailing rates in Philadelphia, as reflected in the fee schedule of CLS (see table below).

As to the number of hours expended, in its Motion for Attorneys' Fees and Costs, Centrix claims $147,118.50 in fees for 444.1 hours worked.  The total number of hours, as calculated in the Motion, contains a mathematical error: the individual hours listed add up to 450.2 hours, not 444.1.  The correct total can be found in Exhibit C to the Motion for Attorneys' Fees and Costs. This table reveals the two errors concealed in the Motion: (1) the Motion omitted from its formula 0.2 hours attributable to Christopher P. Gerber; and (2) the Motion incorrectly attributed to Brian C. Conley six (6) hours instead of 0.6 hours.[7]  Correcting for these errors results in a

---

[7] The supporting documentation confirms that only 0.6 hours should be attributed to Conley.  All of Conley's time

total claim of 445 hours (450.2 - 5.4 + 0.2 = 445).[8]

To calculate the lodestar, the individual hours claimed must be multiplied by each attorney's rate.  Centrix calculated a lodestar of $147,118.50.  This number is incorrect.  It is unclear where the discrepancy lies, but application of each attorney's rate[9] to their hours results in a lodestar of $146,798.00.

| Timekeeper | Hours Claimed | Hourly Rate | Total Fees |
|---|---|---|---|
| Siana | 65.5 | $450 | $29,475.00 |
| Gerber | 0.2 | $375 | $75.00 |
| Brown | 174.9 | $375 | $65,587.50 |
| Flynn | 132 | $275 | $36,300.00 |
| Conley | 0.6 | $240 | $144.00 |
| DelGrosso | 41.8 | $230 | $9,614.00 |
| Mauger | 26 | $190 | $4,940.00 |
| Mason | 2.5 | $175 | $437.50 |
| Fernandes | 1.5 | $150 | $225.00 |
| **TOTAL** | 445 | | $146,798.00 |

It would not be appropriate to apply a general reduction to this lodestar, because Centrix was successful on its only claim (breach of contract).  Therefore, the next step is to consider the reasonableness factors articulated in Pennsylvania Rule of Civil Procedure 1717, cabined by Regional's objections.

Regional first argues that it is *per se* unreasonable to award attorneys' fees equal to

---

entries are redacted, *except* the 0.6-hour entry, and Sheryl L. Brown's Declaration supporting the Motion for Attorneys' Fees and Costs explains that redacted time entries are excluded from the fees sought because they are "not directly related to Centrix Staffing's affirmative breach of contract claim."

[8] Regional challenges the inclusion of Gerber's hours in the lodestar because Brown's Declaration does not mention him.  The invoices detailing the attorneys' work, however, do include his hours, which are therefore adequately documented and will not be excluded.

[9] The rates used for this calculation are those found in Centrix's Memorandum of Law in Support of its Motion for Attorneys' Fees and Costs.

nearly 50% of the damages award but does not cite to a single case in support of this novel bright line rule.  In fact, fees *exceeding* the damages awarded have been found reasonable in this Circuit.  *See, e.g.*, *Evergreen Community Power LLC v. Riggs Distler & Co., Inc.*, 513 F. App'x 236 (3d Cir. 2013) (affirming award of $539,521.15 in attorneys' fees in a case awarding $422,923.83 in damages for breach of contract); *RHJ Med. Ctr., Inc. v. City of Dubois*, 2014 WL 3892100 (W.D. Pa. Aug. 8, 2014) (granting attorneys' fees of $270,663.90 in a case awarding $132,801.64 in damages).  The lodestar calculated here constitutes 46.9% of the Award.  The first factor under Rule 1717 supports the reasonableness of this award, because the time and effort expended by Siana Law have been found reasonable.  Considering the third factor, the results achieved, Centrix was fully successful in litigating its breach of contract claim: the jury found that only Regional had breached the Staffing Services Agreement and awarded Centrix the full principal outstanding on the overdue invoices.  Therefore, no downward adjustment is appropriate on these grounds.

Regional next requests a 50% reduction in fees for "excessive staffing," arguing that the case was overstaffed relative to its simplicity.  In particular, Regional contends that Siana Law should not be reimbursed for research; that it employed too many attorneys; that the turnover rate among its associates was inefficient; and that the executive partner's involvement was unnecessary.  Regional has not pointed to any specific time entries that should be eliminated on the basis of this objection.  Accordingly, its conclusory assertion that the number of hours worked is excessive does not provide "sufficient specificity to give fee applicants notice" of their objections and will not be heeded.  *Rode*, 892 F.2d at 1183.

Regional also argues that Centrix should not be permitted to recover fees for: (1) its motion to compel production of unredacted driver route sheets, which the Court denied; (2) its

motion for summary judgment, which was unsuccessful as to Centrix's breach of contract claim; and (3) its unsuccessful motions in limine.  Regional again has not identified specific time entries that should be stricken.  Furthermore, this Court agrees with the reasoning of the Third Circuit in the unpublished case *Simring v. Rutgers*, 634 F. App'x 853 (3d Cir. 2015), which stated that time spent "pursu[ing] a litigation strategy that does not pursue a tangible result before the Court" is not necessarily wasted.  *Id.* at 860.  Rather, what matters is whether the preparations were "'useful and of a type ordinarily necessary' to the result" obtained.  *Id.* at 861 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986)).  Centrix's motions were not frivolous or unusual, and attorneys' fees incurred in their pursuit will not be excluded from the award.

Regional asserts that hours spent by Siana Law attorneys on "clerical tasks" more appropriately carried out by a paralegal should not be recoverable.  Specifically, it maintains that attorney time entries for clerical tasks total over 21.3 attorney hours and $5,006 in fees, but cites only six examples.  Regional complains that: (1) a third-year associate billed 0.7 hours to "Prepare Exhibit Packet"; (2) a fourteenth-year associate billed time for "Receipt and Review of Notification that Regional Served with Confession of Judgment" (0.1 hours); "Compare Addresses re: E. Graham, F. Graham and W. Graham." (0.1 hours); "Review and Revise Pleadings Binder to Include Discovery Responses" (0.3 hours); and, (3) a partner billed 0.1 hours for "Receipt and Review of Confirmation that Confession of Judgment was Filed" and 0.2 hours for "Conference with Anthony J. DelGrosso re: Jersey City Records and Trial Deadlines."[10]  As Regional has not provided any method by which the rest of the "clerical" time entries could be

---

[10] A seventh example provides, "Bates-Stamp Documents for Supplemental Joint Appendix," but was performed by Fernandes, a paralegal.

identified, only the specific examples provided will be considered.

Regional provides no explanation as to why it was unreasonable for attorneys to perform these tasks and the Court sees no reason why the tasks should have necessarily been performed by a paralegal rather than a lawyer. Accordingly, the attorneys' fee request will not be reduced for this.

Finally, Regional argues that Centrix should not recover fees for (1) any services rendered prior to filing of the Complaint in Confession of Judgment; or (2) "excessive or otherwise unnecessary time not spent toward furthering the litigation of the dispute." In particular, Regional objects to the inclusion of fees for time spent obtaining information under the Open Public Records Act or seeking discovery of documents that were either not produced or not exhibited. Regional offers no reason why research into public records does not constitute work in furtherance of the litigation. In addition, the only example Regional provided of "unnecessary discovery" was 0.9 hours spent preparing a PowerPoint presentation that was not used at trial. Regional again provides no explanation as to why this task was "unnecessarily undertaken" and the Court will not posit one.

For the reasons set forth above, the lodestar is reasonable and no downward adjustments will be made.

### iii.     Bill of Costs

Under the Federal Rules of Civil Procedure, "costs . . . should be allowed to the prevailing party" unless "a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). Rule 54 "creates the 'strong presumption' that costs are to be awarded to the prevailing party" in "full measure." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462, 468 (3d Cir. 2000). "[T]he losing party bears the burden of making the showing that an award is inequitable under the circumstances." *Id.* at 462-63. Costs may be requested for, among other

things, transcripts, printing, and copying.  28 U.S.C. § 1920.  Costs are analyzed under the same

reasonableness standard as attorneys' fees.  *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 181

(3d Cir. 2001).  "[T]he denial of costs to the prevailing party . . . is in the nature of a penalty for

some defection on his part in the course of litigation."  *ADM Corp. v. Speedmaster Packing

Corp.*, 525 F.2d 662, 665 (3d Cir. 1975) (quoting *Chicago Sugar Co. v. American Sugar Refin.

Co.*, 175 F.2d 1, 11 (7th Cir. 1949), *cert. denied*, 338 U.S. 948 (1950)).  Limited success is not a

"defection" and absent a showing that the prevailing party "needlessly prolonged or complicated

the litigation, resulting in unjustifiable costs," a judgment for costs should be entered in its favor.

*Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 926 (3d Cir. 1985).  The

Staffing Services Agreement authorizes the entry of judgment by confession for "for all sums as

may be due by the terms hereof, together with *all costs of suit* and reasonable counsel fees."

Centrix's Bill of Costs seeks $10,268.08 for costs incurred in connection with this

litigation pursuant to Rule 54.  The supporting Declaration of Sheryl L. Brown declares that

these costs were "necessarily incurred in the pursuit of Centrix's affirmative claim against

Regional; and in defense of the claims by Regional, as Defendant on the Counterclaim."  In

addition, Centrix seeks reimbursement for an additional $2,916.29 pursuant to the Staffing

Services Agreement rather than Rule 54.  These include, for example, fees for the use of online

research databases, delivery of documents by mail, and travel expenses.[11]

In its letter brief responding to Centrix's Bill of Costs, Regional argues that Plaintiff's

Bill of Costs should be reduced by $2,408.67, consisting of: (1) $244.03 in fees for attempted

---

[11] These supplemental costs are detailed in Siana Law's invoices rather than the Bill of Costs.  Regional did not
object to these supplemental costs.

service; (2) $153.08 for printing of documents neither subpoenaed nor produced in discovery;[12] and, (3) $2,011.56 for the preparation of trial binders and exhibits.

Costs for attempted service and printing of documents that, for one reason or another, were not produced or used in the litigation will not be excluded from the award of costs. Unsuccessful service and the development of discovery strategies that are not ultimately pursued are commonplace occurrences in litigation and do not constitute conduct deserving of the "penalty" of withheld costs.

The Bill of Costs shows that Centrix expended $2,011.56 to prepare six binders for trial. Regional object to this expense on the grounds that it was inappropriate to spend $502.89 on each set of double-sided exhibits.  As Regional does not, however, suggest what the printing cost should have been instead, it has not provided any grounds to conclude that the cost was unreasonable.  *See, e.g.*, *Becker v. ARCO Chem. Co*., 15 F. Supp.2d 621, 635–36 (E.D. Pa. 1998) (agreeing with opposing party that 10¢ per page, rather than 15¢, was a reasonable rate for photocopying and reducing costs awarded accordingly).

For the reasons above, Plaintiff's request for costs will be awarded in full.

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**

---

[12] Regional's letter brief erroneously states the amount billed for this cost as $253.08.